**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| JULIE BEBERMAN,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF STATE ANTONY RUBIO, IN HIS OFFICIAL CAPACITY,<br><br>Respondent. | ) | CIVIL NO.<br><br>PETITION FOR REVIEW |

## PETITION FOR REVIEW

COMES NOW Petitioner Julie Beberman, pro se, and for her Petition for Review alleges as follows:

1. This is a petition for judicial review of Orders and a Decision of the Foreign Service Grievance Board [hereinafter "the Board" or "the FSGB"] in FSGB No. 2015-035, FSGB No. 2015-045, and FSGB No. 2015-046, all of which the Board combined under FSGB No. 2015-035.

## I. Orders and Decision Appealed

2. The Orders and Decision appealed, in whole or in part, are:

   a. ORDER: Motion to Enforce Interim Relief, issued September 21, 2016, ROP #025;[1]

   b. ORDER: Interim Relief, issued June 14, 2017, ROP #029;

   c. ORDER: Order: Motion for Reconsideration, issued April 24, 2018, ROP #041;

   d. Order: Second Motion for Reconsideration, issued February 11, 2020, ROP #056;

[1] ROP refers to the Record of Proceedings in the combined matter.

e. Order: Motion to Recuse, issued September 28, 2020, ROP #061;

f. Order: Partial Motion to Dismiss, Request for Hearing, Suggestion of Mootness, issued March 8, 2021, ROP #070;

g. Order: Motion for Reconsideration of Order Granting Partial Motion to Dismiss, issued May 14, 2021, ROP #091;

h. Interim Order: Motion to Compel, issued June 22, 2021, ROP #101;

i. Second Interim Order: Motion to Compel, issued June 30, 2021, ROP #106;

j. Order: Correction to Interim Order re Motion to Compel, issued July 7, 2021, ROP #111;

k. Third Interim Order: Motion to Compel, issued July 30, 2021, ROP #122;

l. Interim Decision and Order re Jurisdiction, issued September 28, 2021, ROP #136;

m. Order: Motion for Remand otr to Amend Grievance, issued December 1, 2021, ROP #150.

n. Order: Motion to Vacate and Submit Evidence, issued December 3, 2021, ROP #152;

o. Order: Fourth Motion to Compel, issued February 1, 2022, ROP #160;

p. Second Order: Fourth Motion to Compel, issued March 9, 2022, ROP #170;

q. Order: Fifth Motion to Compel, issued June 13, 2022, ROP #183;

r. Decision, issued September 28, 2022, ROP #190; and

s. Order: Motion for Attorney's Fees, issued January 31, 2023, ROP #202; and

t. Decision on Remand, September 30, 2025.

## II. The Parties

3. Petitioner Julie Beberman served as a Foreign Service Officer career candidate in the Foreign Service of the U.S. Department of State [hereinafter "the Department"]. She retired involuntarily from the Foreign Service on October 31, 2019.
4. Respondent Marco Rubio is the Secretary of State and is sued only in his official capacity.

## III. Jurisdiction and Venue

5. This action arises under the Foreign Service Act of 1980 (FSA), 22 U.S.C. § 3901 *et seq*.
6. The Board's Orders and Decisions are reviewable under FSA § 1110, 22 U.S.C. § 4140 in accordance with standards set forth in the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.
7. This petition is timely because, in accordance with 22 U.S.C. § 4140, it is filed within 180 days of the issuances of the Board's Decision and within 90 days as required by 22 U.S.C. § 4140(b)(2).
8. The Court has federal subject matter jurisdiction under 28 U.S.C. § 1331.
9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1).

## IV. Brief Background

10. Beberman served as a Foreign Service Officer career candidate.
11. Ms. Beberman filed three grievances against the Department, which the Department denied.
12. She then timely appealed the Department's adverse decision to the Board in FSGB No. 2015-035, 2015-045, and 2015-046, which the Board combined under FSGB No. 2015-035.
13. The Board issued the series of Orders and the Decision identified in paragraph 2 of this Petition for Review as 2(a) to 2(s).

14. Ms. Beberman petitioned for review in the District Court of the District of Columbia in Civil No. 22-3434.

15. The District Court of the District of Columbia remanded to the Department "solely to consider whether to permit Beberman to amend her grievance to challenge the November 2012 end date of her rating period, and if so, to address the merits of that claim." *Beberman v. Rubio*, Civil Action No. 22-3434 (TJK), 2025 LX 95457, at *60 (D.D.C. May 12, 2025).

16. The District Court of the District of Columbia stated that its order was a "final, appealable order" and directed the Clerk of Cout to close the case.

17. Ms. Beberman appealed the District Court of the District of Columbia's decision, except for the issue remanded, to the D.C. Circuit Court of Appeals in No. 25-5244, which is currently pending before the Court on Appellee's Motion to Dismiss, or in the Alternative for Summary Affirmance, filed August 22, 2025.

18. Appellee Marco Rubio argues that "[the D.C. Circuit"] lacks appellate jurisdiction because the district court's remand to the Grievance Board in not a final order." *Beberman v. Rubio*, Mot. for Summ. Aff. at 1 (filed Aug. 22, 2025).

19. Appellee Rubio takes the position that "[w]hen as here, part of a case is remanded to an agency, it generally renders the entirety of the District Court's ruling nonfinal." *Id.* at 14.

20. On remand, the Board concluded: "We deny on its merits the sole claim remanded to the Board. We uphold our previous Interim Decision and Decision in their entirety." FSGB No. 2015-035 at 25 (Sept. 30, 2025).

## V. Non-exclusive Grounds for Review.

Ms. Beberman seeks review of each of the Orders and the Board's Decisions listed in paragraph 2, in whole or in part, on the grounds, including, but not limited to, that:

21. The FSGB, arbitrarily and capriciously, erred in failing to expunge or further redact Ms. Beberman's Employee Evaluation Report (EER) for July 26 to November 7, 2012, and order that she be considered for tenure thereafter, in that:

    a. The rating period indicated on her EER was inaccurate and misleading;

    b. The actual rating period was too short for an accurate evaluation of Ms. Beberman's performance, as shown by juxtaposing this critical EER with all her EERs, awards, and commendations, both before and after she was denied tenure, praising her performance;

    c. The period during which her performance was evaluated in a rater-ratee relationship was so short as to be an insufficient period to evaluate her performance;

    d. The beginning date of the rating period as specified on her EER was incorrect in that the date preceded the date upon which the rater-ratee relationship began and the FSGB arbitrarily and capriciously found Ms. Beberman was aware of who her rater was before she was informed of who her rater was, absent any evidence in the record (with no evidence that there was even any decision made as to who her rater would be, any earlier than when she was informed);

    e. The end date of the rating period was false and misleading because she was not allowed to perform the majority of her work requirements and her rater did not evaluate her performance after she no longer had access to consular systems;

f. The end date of the rating period was false and misleading in that it was specifically selected to give the impression that she had been afforded 60 days to improve her performance and had failed to show improvement; furthermore, the Department's recent fabrication that the date was chosen because it was the date upon which Ms. Beberman curtailed from post, when Ms. Beberman did not curtail until weeks later, tends to show that the Department has no legitimate reason for choosing November 7 as the end date for the rating period, other than to misleadingly suggest that Ms. Beberman had 60 days in which to improve, when she did not;

g. The end date of the rating period falsely implies that Ms. Beberman performed duties upon which she could be evaluated, that she was observed performing those duties, and that she made no improvement;

h. Her rater admitted to falsifying her rating to deliberately deprive her of substantive rights, including the opportunity to improve and to have the matter reviewed;

i. If her rater had not falsified her rating, she would have received additional procedural protections and an opportunity to improve;

j. The EER contained numerous critical statements without her having been first counseled and having been afforded the opportunity to improve in violation of her right to substantive due process;

k. The repetition of negative comments, that the Board required to be redacted, demonstrated an animus against Ms. Beberman, that the EER was unbalanced and unremittently negative, and, therefore, should have been expunged in full, not just redacted;

l. Comments about Ms. Beberman's adjudication rate, annotations, and VLA violations were improper because Ms. Beberman was not afforded adequate training;

22. The FSGB, arbitrarily and capriciously, erred in finding that Ms. Beberman was not entitled to counseling and an opportunity to improve.

23. The FSGB, arbitrarily and capriciously, failed to redact or expunge statements from Ms. Bebeman's EER for July 26 to November 7, 2012, given that the statements were inaccurate, misleading, and made without counseling or affording her an opportunity to improve, including but not limited to:

    a. Superlatively negative content about a visa Ms. Beberman issued to an applicant in which there was an erroneous 9B2 comment without reporting the exculpatory decision of the Visa Office that the applicant was not clearly ineligible for a visa;

    b. A statement in Ms. Beberman's EER that there was a 9B2 hit, when that was inaccurate in that there was an erroneous 9B2 comment and no hit;

    c. A negative reference to the issuance of a visa to the applicant with a 9B2 comment, when Ms. Beberman documented in her case notes that the applicant had no unlawful presence and was not ineligible for a visa, and the only additional statement that her rater testified that he would have wanted her to include was, "documented extension," when such extension was already documented in a DHS report in the case file;

    d. The statement that there was no explanation in the case file for issuance of the visa, when there was a lengthy DHS report embedded in the file, showing the applicant with the "9B2" comment had no unlawful presence.

    e. The statement that there was an FBI fingerprint match with the applicant, when it was clear that the applicant was the alien listed on the consular computer database and that statement was just included to give the false impression that Beberman was wrong to issue the visa, when the applicant was not ineligible for a visa, as the Visa Office found.

f. A negative reference to the issuance of a visa to the applicant with a 9B2 comment, when the Consular Integrity Division found that the issuance was not a VLA violation;

g. That the issuance of a visa to an applicant who was not clearly ineligible for a visa was a sufficient basis for her rater to conduct a deep review of only Ms. Beberman's adjudications;

h. That Ms. Beberman did not annotate her case notes when applicants had been previously refused visas when she was not first counseled to do so and given an opportunity to improve;

i. That Ms. Beberman did not annotate her case notes when applicants had been previously refused when there was no formal requirement that she do so, when she was not advised or trained that she needed to do so, and because there was no harm shown;

j. That Ms. Beberman had overriden her own refusal, when she had not first been advised or trained that she should not override her own refusal, was not counseled, and was not given an opportunity to improve;

k. That Ms. Beberman had issued three potential VLA violations when those potential VLA violations were issued before the rater-ratee relationship began and without giving Ms. Beberman an opportunity to improve during the rating period;

l. That Ms. Beberman had committed a "potential" VLA violation, prior to the Visa Office having determined it to be an actual VLA violation, without having first counseled her and given her an opportunity to improve; and

m. That Ms. Beberman had a low visa refusal rate when the evidence was that there was no target visa refusal rate, that according to her rater, Ms. Beberman was never

counseled to increase her visa refusal rate, and there was no connection between her refusal rate and the overstay rate of applicants to whom she issued visas, or between her refusal rate and VLA violations.

24. The FSGB, arbitrarily and capriciously, erred in failing to find that the relationship between Ms. Beberman and her rater was so strained as to warrant expungement of her EER, particularly given the unwarranted repetition of negative comments, the statement that the EER was being prepared at HR's request, and the inclusion of reference to her curtailment, which the Department later agreed to redact;

25. The FSGB, arbitrarily and capriciously, erred as a matter of law in finding that reporting a VLA violation in an EER is not a disciplinary action, so that the grievant is not entitled to a hearing at which the Department would bear the burden of proof, given that

    a. The recission of Ms. Beberman's suspension did not rescind the underlying VLA violations that formed the basis of the disciplinary action; and

    b. Reporting a VLA violation in an EER is a disciplinary measure in that Congress imposed it as a disciplinary measure; the Department informed all officers that reporting a VLA violation is a disciplinary action; the FSGB previously held that such reporting was a disciplinary measure; the FSGB erred in not applying its new holding that a VLA violation is not a disciplinary action only prospectively; and like other offenses, a VLA violation is punished without the prerequisite of counseling.

26. The FSGB, arbitrarily and capriciously, erred in dismissing the disciplinary action against Ms. Beberman as moot, when it had not reached the claims that formed the basis of the disciplinary action.

27. The FSGB, arbitrarily and capriciously, erred in not placing the burden to prove the VLA violation finding was correct on the Department when the evidence was exclusively in the Department's control.
28. The FSGB, arbitrarily and capriciously, erred in denying Ms. Beberman's discovery requests and finding that the Visa Office was correct in denying Ms. Beberman's discovery requested, when Ms. Beberman had the burden to show that the VLA violations were unfounded.
29. The FSGB, arbitrarily and capriciously, erred in finding that the Visa Office's finding that she had committed VLA violations justified her rater's arbitrary and capricious decision, before the Visa Office had made such a finding, to deeply review only her adjudications and not to compare her adherence to adjudication procedures (i.e. requesting Security Advisor Opinions as appropriate) with those of any of the other consular officers.
30. The FSGB, arbitrarily and capriciously, erred in finding that, with respect to Ms. Beberman's allegations that she was treated differently:
    a. Ms. Beberman was not subject to arbitrary and capricious treatment in that her rater treated her differently than the other consular officers;
    b. Ms. Beberman was not subject to discriminatory treatment in that her rater treated her differently than male consular officers;
    c. Ms. Beberman was not subject to discriminatory treatment when she was replaced in the duty she was about to fill by a male officer;
    d. Ms. Beberman was not subect to discriminatory treatment when she did not receive the same level of training as the younger consular officers; and
    e. Ms. Beberman was not subject to gender discrimination when her rater purposefully humiliated her in front of male officers; and

f. Ms. Beberman was not subject to gender discrimination when her rater frequently referred to her engineering background in a deprecating manner.

31. The FSGB, arbitrarily and capriciously, erred in failing to find that the Visa Office had violated procedures and protocol in failing to request a Consular Integrity Division (CID) review, when there is no evidence that the Visa Office did so, and in not awaiting the CID's report before submitting the case to the VLA Panel.

32. The FSGB arbitrarily and capriciously erred in failing to find that a CID report was required, even though Beberman was accused of four VLA violations given that four out of more than 11,000 does not necessarily suggest a pattern and it could not have been known that there were more than a single VLA violation until after the VLA Panel met.

33. The FSGB, arbitrarily and capriciously, erred in finding that at a VLA Panel member could properly decide the scope of evidence that Ms. Beberman could present on appeal of the VLA Panel's decision, and that the conflict was absolved because there were four Panel members

34. The FSGB, arbitrarily and capriciously, erred in finding that the VLA Panel member's adverse evidentiary decision, suppressing evidence that Ms. Beberman requested to present to the Visa Office Director to show that she had not committed VLA violations, was harmless.

35. The FSGB, arbitrarily and capriciously, erred in finding that Ms. Beberman committed VLA violations, when:

a. There was no evidence that the applicants were the non-citizens named on the visa lookout system;

b. The Department has conceded that none of the applicants in question were the non-citizen listed on the visa lookout system;

c. There was no evidence that she believed the applicants to be the listed non-citizens;

d. The FSGB failed to give a fresh look at Ms. Beberman's evidence and arguments;

e. The FSGB failed to sufficiently articulate its factual findings and conclusions for upholding the four VLA violations;

f. The FSGB failed to find that the VO had considered whether Ms. Beberman had made a good-faith effort;

g. The FSGB failed to find that Ms. Beberman was entitled to counseling and an opportunity to improve before a report could be made of a VLA violation on her EER, because the applications were not the listed non-citizens;

h. The FSGB failed to find that Ms. Beberman was entitled to counseling and an opportunity to improve before a report could made of a VLA violation on her EER, because there was no exact name match between the applicants and any alien's name on the visa lookout system.

i. The FSGB failed to find that Ms. Beberman was treated differently than a male comparator, with respect to the amount of due process afforded;

j. The FSGB failed to consider that Ms. Beberman was treated more harshly than a male comparator, who had issued to non-citizens who were the non-citizens on the lookout system;

k. The FSGB failed to find that the Visa Office has not adequately expressed its reasons; and

l. The VLA Panel and Visa Office Managing Director failed to consider that: Ms. Beberman showed good-faith effort in that no bright-line rule applied; she had never been counseled, she had made a good-faith effort commensurate with her training; she had made a good-faith effort in accordance with her habit and track record of over

11,000 visas; she had annotated the file, showing that the biographical information for each of the applicants differed from that of the non-citizens listed on the visa lookout system; she had remarked in one of the cases that the applicant had not been present where the listed non-citizen may have committed a crime; and she had provided further detailed additional explanations to the Visa Office as permitted under the FAM's procedures, showing she had properly resolved that the applicants were not the listed non-citizens, before issuing the visas.

36. The FSGB, arbitrarily and capriciously, erred in not finding that the Department failed to afford Ms. Beberman due process in finding the VLA violations in that the Visa Office failed to adequately express its reasons or consider Ms. Beberman's explanations; the Visa Office improperly denied Ms. Beberman evidence to support her appeal; Chief Bent, who served on the VLA Panel and denied Ms. Beberman evidence was biased; the Visa Office failed to obtain a report from the Consular Integrity Division before convening a VLA panel; and Ms. Beberman's rater misused the VLA system to seek her curtailment.

37. The FSGB, arbitrarily and capriciously, erred in ordering only redaction of some repetitions of unfair and misleading comments and left others, failing to find such repetition showed the rating was so unbalanced or the rater so biased as to warrant expungement.

38. The FSGB, arbitrarily and capriciously, erred in finding that Ms. Beberman's positive evaluations from her Washington assignments were irrelevant.

39. The FSGB, arbitrarily and capriciously, erred in finding that there was no need to consider Ms. Beberman's excellent evaluations from her subsequent overseas assignment and her evaluations domestically in considering whether her Caracas EERs were out of tune with the rest of her performance record, and therefore, more likely inaccurate.

40. The FSGB, arbitrarily and capriciously, erred in failing to order redaction of the Area for Improvement (AFI) in Ms. Beberman's July 2012 EER on the grounds that:

    a. Ms. Beberman did not affirmatively state she was never counseled by her first rater on the issue of her communication style, when she did claim that she was never counseled on her communication style;

    b. Ms. Beberman never raised the lack of counseling to her first rater, when the evidence showed she had;

    c. Ms. Beberman joined her rater in drafting the EER, when the evidence showed she had not done so;

    d. Counseling Ms. Beberman about requesting structural changes to the consular section would place Ms. Beberman on notice of any concerns regarding communications affecting her peer;

    e. Ms. Beberman would have learned from other employees' EERs that employees typically comment about remarks in their rating they find improperly vague; and

    f. Ms. Beberman did not show by a preponderance that she was never counseled or afforded an opportunity to improve as to her communication style and its effect on her peers before her rater referenced this AFI in her EER.

41. The FSGB, arbitrarily and capriciously, erred in finding it fair to compare Ms. Beberman's performance, including her adjudication and refusal rates, with those of the other consular officers, when she proved she had not received the same level of training as they had.

42. The FSGB, arbitrarily and capriciously, erred in finding it proper for Ms. Beberman's rater to have commented in her EER that she had requested additional training, a comment that he testified he intended to be construed negatively as meaning that she did not consider herself to be qualified for tenure.

43. The FSGB, arbitrarily and capriciously, erred in not resolving the question of whether the rater's references to coaching and counseling were properly included in Part III of Ms. Beberman's EER, the section meant to cover "the employee's performance and accomplishments."

44. The FSGB, arbitrarily and capriciously, erred in finding that Ms. Beberman's rater had informed her that strong performance of her specific objectives would be weighted so much less as to be coined "ancillary."

45. The FSGB, arbitrarily and capriciously, erred in finding that Ms. Beberman's accomplishments were properly dismissed as "ancillary" when a male co-worker was evaluated on similar task without such performance being denigrated as "ancillary."

46. The FSGB, arbitrarily and capriciously, erred in finding that Ms. Beberman's requests for additional training, expressions of self-doubt, and satisfaction with being selected for the immigrant visa unit, were an admission of her own error and showed she was not driven to excel in her non-immigrant visa work, rather than an indication of her post's deficiency in training her, causing her a long learning curve in increasing her non-immigrant visa adjudication rate, as compared to her peers who received the complete on-site training program.

47. The FSGB, arbitrarily and capriciously, erred in denying her interim relief and denying her two motions for reconsideration, when Ms. Beberman showed that there was more than a remote possibility she would prevail in having her Embassy Caracas EERs redacted or expunged.

48. The FSGB, arbitrarily and capriciously, erred in denying her motions to compel which would have produced evidence to support her grievances, including not allowing her any

discovery to prove her discrimination claims, that she was in the habit of following procedures, and other evidence that she sought to use to prove her grievances.

49. The FSGB, arbitrarily and capriciously, erred in denying her motion to amend her grievance in part.

50. The FSGB, arbitrarily and capriciously, erred in not allowing her to file her amended grievance together with the 13 Exhibits supporting it, before denying her amended grievance.

51. The FSGB, arbitrarily and capriciously, erred in failing to vacate the denial of her amended grievance so that Ms. Beberman could file the 13 Exhibits supporting her amended grievance, so that the FSGB would have the full body of evidence before it before denying such amended grievance.

52. The FSGB, arbitrarily and capriciously, erred in denying Ms. Beberman's Motion to Enforce Interim Relief in which Ms. Beberman moved the FSGB to direct the Department not to curtail her assignment at Embassy Malabo, or to transfer her back to Embassy Malabo, and to allow her to serve that assignment and any ongoing assignments while on interim relief from separation.

53. The FSGB panel presiding over this grievance, arbitrarily and capriciously, erred in failing to recuse when it admitted that it could not compartmentalize evidence that it received in other grievances that Ms. Beberman had brought, over which it also presided.

54. The FSGB, arbitrarily and capriciously, erred in failing to rule on Ms. Beberman's Request to File Motion to Vacate and to Reopen Discovery, filed June 14, 2022, arguing that a report had been released stating that Ms. Beberman had not issued a visa to an application with a "'9B2' violation" and that at least 99.8% of the applications with prior refusals to whom Ms. Beberman had issued visas complied with the exit terms of their visas, tending to show

she exercised sound judgment, and that her not referring to the prior refusals in her cases notes, if erroneous at all, was harmless. (The FSGB also failed to docket this filing it the inventory, a ministerial error which Ms. Beberman is seeking to have corrected).

55. The FSGB, arbitrarily and capriciously, erred in denying Ms. Beberman's request for attorney's fees given that Ms. Beberman prevailed in having portions of her EER redacted and prevailed in having her redacted EER present to reconstituted CTBs; that she obtained mitigation of the disciplinary action at the agency-level and recission of the disciplinary action before the Board, and that she had been represented in mediation of this matter.

56. The FSGB wrongly denied Ms. Beberman interim relief from separation when she showed that there was more than a remote possibility that she would prevail on this grievance.

57. The FSGB, arbitrarily and capriciously, erred in not awarding backpay when the Board has authority to grant backpay under 22 U.S.C. §§ 4137(b)(4) and 4131(a)(1)(G), 22 C.F.R. § 908.1(d), and 3 FAM 4455(b)(4).

## VI. PRAYER FOR RELIEF

58. The Board's orders and decision were arbitrary and capricious, an abuse of discretion, and contrary to law. Therefore, this Court should reverse, vacate, or remand with directions to modify the Orders and Decisions the Board issued in FSGB No. 2015-035.

59. Ms. Beberman requests that this Court order relief, including but not limited to, in combination or as alternatives:

   a. Expungement of Ms. Beberman's EER for the period from July 26 to November 7, 2012 and reconsideration for tenure and promotion;

   b. Redaction of the AFI for the EER ending July 6, 2012 and reconsideration for tenure and promotion;

   c. Immediate retroactive tenure;

d. Immediate suspension of separation;

e. Immediate retroactive reinstatement;

f. Immediate retroactive promotion;

g. Consideration for tenure and promotion based on all Ms. Beberman's EERs, awards, and commendations during the period she served as a Foreign Service Officer;

h. Remand for the Board to grant backpay, pursuant to 22 U.S.C. § 4131(a)(1)(G), 22 U.S.C. § 4137(b)(4), 22 C.F.R. § 908.1(d), and 3 FAM 4455(b)(4) for the financial benefits she would have received had she not been wrongfully denied tenure, wrongfully denied interim relief, and separated based on false EERs. *See Miller v. Baker*, 969 F.3d 1098, 1100 (D.C. Cir. 1992);

i. Remand for the FSGB to grant attorney fees for the litigation before the FSGB and at the Department-level;

j. Attorney fees before this Court, if any are incurred;

k. Costs; and

l. All other relief deemed just, equitable, and proper.

Respectfully submitted,

DATED: December 8, 2025

*/s/ Julie A. Beberman*
Julie A. Beberman
P.O. Box 223029
Christiansted, V.I. 00822
(340) 277-1613
OilGenie@yahoo.com